UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAKE COUNTRY FOODS, INC.
132 South Concord Road
Oconomowoc, WI 53066,

      Plaintiff,

    v.                                        Case No. 18-CV-734

HOUSTON CASUALTY COMPANY
c/o National Registered Agents, Inc.
2875 Michelle Drive, Suite 100
Irvine, CA 92606,

      Defendant.

## COMPLAINT

Plaintiff, Lake Country Foods, Inc., by its attorneys Quarles & Brady LLP, for its Complaint against Defendant Houston Casualty Company, states as follows:

## INTRODUCTION

1. This is an insurance coverage action in which Plaintiff seeks to enforce its rights under a product contamination insurance policy that Defendant issued.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Lake Country Foods, Inc. ("LCF") is a contract manufacturer serving a wide variety of customers in the dry powder, sports nutrition, general nutrition and meal replacement markets. LCF is a Wisconsin corporation with its principal place of business at 132 South Concord Road, Oconomowoc, Wisconsin 53066.

3. Defendant Houston Casualty Company ("HCC") is an insurer engaged in the business of selling insurance contracts to commercial entities such as LCF in Wisconsin and elsewhere. Upon information and belief, HCC is incorporated under the laws of Texas and

maintains its principal place of business in Texas. HCC's registered agent for service of process is National Registered Agents, Inc., 2875 Michelle Drive, Suite 100, Irvine, CA 92606.

4. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court therefore has jurisdiction of this matter by virtue of 28 U.S.C. § 1332.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise this action occurred in this District.

## THE HCC INSURANCE COVERAGE

6. HCC issued policy number H717-80094 ("the HCC Policy") to LCF for the policy period March 10, 2017 to March 10, 2018.

7. The HCC Policy provides product contamination coverage subject to a self-insured retention of $100,000 and policy limit of $3,500,000.

8. The HCC Policy provides, in relevant part:

> [T]he Insurer hereby agrees to reimburse the Insured for Insured Losses in excess of the Self Insured Retention and subject to the applicable Limits of Liability…incurred directly and solely as a result of an Insured Event, provided that: (a) the Insured Event was first discovered by the Insured during the Policy Period; (b) the Insured Event was reported to the Insurer…; and (c) as of the inception date of this Policy the Insured had no knowledge of any circumstance that may lead to the any Insured Losses.

9. The HCC Policy defines "Insured Event" to include "Accidental Product Contamination" and defines "Accidental Product Contamination," in relevant part:

> [A]ny actual accidental or unintentional contamination, impairment, mislabeling of Products…during their manufacture, blending, mixing, compounding, packaging, labeling, preparation, production, processing, distribution or storage of on the Insured's premises or at a storage site contracted by the Insured, provided that consumption or use of said Products, within 365 days of such consumption or use, either has resulted or would result in:

> > (a) Clear and identifiable symptoms of Bodily Injury, to any person(s) or animal(s); or
>
> > (b) Physical damage to or destruction of tangible property other than to Products of the Insured.

> 10. The HCC Policy defines "Insured Losses" to include recall expenses, the value of contaminated products, lost gross profit, rehabilitation expenses, and increased costs of working.

## LCF's INSURANCE CLAIM

> 11. In October 2017, LCF discovered the presence of Salmonella in large quantities of powdered whey protein processed and packaged at LCF's facility in late-September and early-October 2017.

> 12. LCF could not sell this product, and instead had to refund its customers, because consumption of the product would result in clear and identifiable symptoms of bodily injury.

> 13. LCF promptly notified HCC of the accidental product contamination.

> 14. HCC initially accepted the claim and in December 2017 paid approximately $1.2 million toward LCF's insured losses.

> 15. LCF's insured losses exceed the $1.2 million payment made in December 2017.

> 16. By letter dated April 17, 2018, HCC reversed course and not only declined to reimburse LCF for its full insured losses, but also demanded return of the $1.2 million paid in December 2017.

> 17. HCC claimed that positive tests for Salmonella at LCF's facility before the HCC Policy incepted excluded coverage for the product contamination.

> 18. In reality, the test results cited by HCC did not give LCF reason to expect a product contamination event. In other words, as of the inception date of the HCC Policy, LCF had no knowledge of any circumstance that may lead to insured losses.

19. The positive test results were isolated to a floor area and would not impact LCF's product, which passes through an enclosed system. In fact, LCF continued processing product for nearly a year without issue.

20. The accidental product contamination was unrelated to the positive test results cited by HCC.

21. Instead, upon information and belief, the accidental product contamination resulted from construction work done at LCF's facility during the summer/fall of 2017.

22. All conditions precedent to coverage under the HCC Policy have been satisfied or waived.

## COUNT 1 – BREACH OF CONTRACT

23. Paragraphs 1 through 22 are incorporated and re-alleged as though fully set forth herein.

24. The HCC Policy is a valid and binding contract that obligates HCC to fully reimburse LCF for its insured losses, up to the policy limits.

25. By failing to fully reimburse LCF for its insured losses, HCC has breached its obligations under the HCC Policy.

26. As a direct and proximate result of the HCC's breach, LCF has suffered damages, including the impending closure of its operations.

## COUNT 2 – DECLARATORY RELIEF

27. Paragraphs 1 through 26 are re-alleged and incorporated as though fully set forth herein.

28.     There is currently a justiciable controversy concerning the rights and obligations of LCF and HCC rights under the HCC Policy, including the $1.2 million already paid to LCF and additional amounts owed to LCF.

29.     By the terms and provisions of the Federal Declaratory Judgments Act (28 U.S.C. § 2201) and Rule 57 of the Federal Rules of Civil Procedure, this Court is empowered to declare the rights and obligations of LCF and HCC.

WHEREFORE, LCF prays that this Court enter judgment as to HCC:

(a)     declaring that the accidental product contamination at LCF's facility triggers coverage under the HCC Policy, thereby entitling LCF to retain the $1.2 million previously paid by HCC and obligating HCC to fully reimburse LCF for its insured losses;

(b)     awarding LCF a money judgment for damages, in an amount to be determined by the trier of fact, including all amounts LCF is entitled to recover under the HCC Policy;

(c)     awarding LCF all attorney fees and expenses incurred in this action as allowed by law;

(d)     awarding LCF all interest on the above amounts allowed by law, including pre- and post-judgment interest; and

(e)     awarding LCF such other and further relief as this Court deems necessary, proper, and just.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests trial by jury of all issues so triable in this action.

Dated: May 11, 2018.

/s/Brandon Gutschow
Keith A. Bruett #1030971
Brandon Gutschow #1066002
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2350
Milwaukee, WI 53202-4426
Phone: 414.277.5000
Email: Keith.Bruett@quarles.com
   Brandon.Gutschow@quarles.com

Gregory B. Gill #1015838
Gill & Gill SC
501 South Nicolet Road
Appleton, WI 54914
Phone: 920.739.1107
Email: gillsr@gillandgillsc.com

*Attorneys for Lake Country Foods, Inc.*